**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JANICE L. ROBERTS                                                                  PLAINTIFF

v.                                No. 4:17CV00793 JLH

ARKANSAS DEPARTMENT OF
WORKFORCE SERVICES                                          DEFENDANT

**OPINION AND ORDER**

Janice Roberts has worked for the Arkansas Department of Workforce Services since 2007. She sues that agency, alleging "a hostile work environment and retaliation for reporting unlawful discrimination against the Plaintiff; discrimination, a hostile work environment, and violations of [her] due process and equal protection rights." Document #16 at 2. Roberts says the agency failed to promote her, "failed to maintain classification, duties, and responsibilities, and otherwise discriminated and retaliated" against her. *Id.* at 2-3.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

In this case, Count One of the amended complaint is for "discrimination," and it describes "harassment and a hostile work environment based on her race, age, and gender." *Id.* at 5. This count mentions Title VII and the Arkansas Civil Rights Act. *Id.* Count Two is for violations of "the Fourteenth Amendment[] to the United States [Constitution]." *Id.* at 6. In this count Roberts

mentions due process as well as equal protection. *Id.* Count Three is for "retaliation" after reporting alleged unlawful discrimination, and it mentions Title VII. *Id.* at 7. In the jurisdiction paragraph of her complaint, Roberts also mentions 42 U.S.C. § 1981 and the Age Discrimination in Employment Act. *Id.* at 1. Roberts names as the sole defendant the Arkansas Department of Workforce Services, "a department of the State of Arkansas, a public body organized and existing under the laws of the State of Arkansas." *See id.* at 1-2.

The Department moves for summary judgment on several bases. First, it asserts Eleventh Amendment sovereign immunity on Roberts's 42 U.S.C. § 1981 and ADEA claims. Document #29-1 at 5-6. The Department also asserts sovereign immunity on Roberts's ACRA claim pursuant to the Arkansas Constitution. *Id.* at 6-7.

The Eleventh Amendment to the United States Constitution bars suit against a state in federal court unless the state has consented to suit or if Congress has unequivocally and validly abrogated the states' sovereign immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55, 116 S. Ct. 1114, 1122-23, 134 L. Ed. 2d 252 (1996). This immunity applies to state agencies. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). States and state agencies are immune from both § 1981 and ADEA claims in federal court. *Rush v. State of Ark. Dep't of Workforce Services,* 876 F.3d 1123, 1126 n.1 (8th Cir. 2017); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005); *see also Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1049 (E.D. Mo. 2014) (dismissing claims under §§ 1981, 1983, and the Fourteenth Amendment based on Eleventh Amendment immunity). As Roberts has sued only the Department in this case, summary judgment is granted on Roberts's claims under § 1981 and the ADEA.

The Arkansas Constitution provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." Ark. Const. Art. 5 § 20. And the Arkansas Civil Rights Act expressly states that it shall not "be construed to waive the sovereign immunity of the state of Arkansas." Ark. Code Ann. § 16-123-104. Arkansas has not waived sovereign immunity in ACRA cases. Summary judgment is therefore granted on Roberts's ACRA claims. *See Reddix v. Ark. Dep't of Workforce Servs.*, 2019 WL 1449613 at *6 (E.D. Ark. Mar. 31, 2019) (dismissing plaintiff's ACRA claims against Arkansas Department of Workforce Services as barred by sovereign immunity); *Rauf v. Ark. State Police*, 2008 WL 4643904 at *3 (E.D. Ark. Oct. 20, 2008) (dismissing plaintiff's ACRA claims against the Arkansas State Police as barred by sovereign immunity).

Roberts's remaining claims are for race and sex discrimination, a hostile work environment, and retaliation under Title VII. The Department next argues for summary judgment because Roberts failed to exhaust administrative remedies. The Title VII laws establish that a complaining employee must exhaust administrative remedies before filing suit. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). Within 180 days of the alleged unlawful employment practice, a plaintiff must file a charge of discrimination with the EEOC setting forth the facts and nature of the charge. *Id.*; 42 U.S.C. § 2000e-5(b), (c), (e). The plaintiff must then file suit against the respondent named in the charge within 90 days of receiving a notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1).

"Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams*,

3

21 F.3d at 222. A plaintiff must give notice of all claims of discrimination in the administrative complaint. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000).

In this case, Roberts filed two EEOC charges. Document #30-4. She filed the first charge on March 8, 2017. That charge states that discrimination took place from "07-29-2016" through "11-18-2016." *Id.* at 1. It charges discrimination based on race, sex, and age, and retaliation. *Id.* The charge explains:

> I was hired on or about April 9, 2007, with my most recent position as Workforce Specialist/Receptionist. On July 29, 2016, I was forced to move from the Central Office location to the Pine Bluff location. on or about November 18, 2016, I noticed my job title had been changed from Program Monitor to Workforce Specialist/Receptionist.
>
> I believe I was subjected to the above treatment because of my race and sex, Black female, and in retaliation for filing previous complaints with the agency and EEOC charge, in violation of Title VII of the Civil Rights Act of 1964, as amended, and my age, 56, in violation of the Age Discrimination in Employment Act of 1967, as amended.

*Id.* The EEOC mailed Roberts her notice of right to sue on September 13, 2017. *Id.* at 3.

Roberts filed her second charge of discrimination on November 20, 2017. *Id.* at 4. The charge confines the dates of discrimination from "05-04-2017" through "10-31-2017." *Id.* The charge only checks that it is based on "retaliation." *Id.* Roberts described:

> On or about 04/09/2007, I was hired as Management Program Analyst. Starting around 05/04/2017 and up to 10/31/2017, I have been harassed and disciplined.
>
> I was not given a reason as to why I have been harassed and disciplined.
>
> I believe I have been harassed and discipline in retaliation for filing grievances and previous EEOC Charges in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* On November 29, 2017, the EEOC mailed Roberts her right to sue letter. *Id.* at 5.

4

Turning to the facts underlying Roberts's claims in this lawsuit, the Court deems admitted almost all of the facts in the Department's statement of undisputed facts in support of summary judgment. Local Rule 56.1 provides that a party opposing a motion for summary judgment must file a short and concise statement of material facts as to which it contends a genuine dispute exists to be tried. The rule further provides that all material facts set forth in the moving party's statement of facts "shall be deemed admitted unless controverted by" the nonmoving party's statement of facts. Local Rule 56.1(c).

In this case the Department has filed a statement of material facts. Document #28. Roberts has also filed a statement of facts, but her statement does not controvert the vast majority of facts set forth by the Department. Document #44. Construing Roberts's statement of facts very broadly, she has only contested two of the Department's facts. First, she says that "the actors knew about [her] past complaints of discrimination." Document #44 at 1 (citing Document #43-1 at 18-20, 21-22). Second, Roberts says that she did not attempt supervise a peer employee outside her chain of command. *See id.* at 2 (citing Document #43-6). Because these two facts can fairly be said to dispute facts proffered by the Department, Roberts has controverted them. Besides these two, the Court deems admitted all the other facts in the Department's statement of facts. *See* Local Rule 56.1; *see also Ballard v. Heineman*, 548 F.3d 1132, 1133 (8th Cir. 2008) (deeming the movants' statements of fact in support of their motions for summary judgment admitted under the district court's local rule where the plaintiff did not respond to the statements).

Roberts was transferred from the Department's Little Rock office to its Pine Bluff office on July 29, 2016. Document #28 at 3. The parties agree that she did not file an EEOC charge based on that transfer until March 8, 2017, more than 220 days after it occurred. Document #30-4 at 1.

5

Because this charge was outside the 180-day window, it is untimely. Her claims based on that transfer are therefore barred by statute. *See Williams*, 21 F.3d at 222.

Some of Roberts's claims are based on a disciplinary she received on December 8, 2017, and the denial of work attendance pay on November 21, 2017. Document #28 at 19, 21. The Department argues that Roberts did not properly exhaust claims arising from these events because they both occurred after she filed her last EEOC charge. See Document #29-1 at 10-11.

The Eighth Circuit has explained that in order to further the remedial purposes of Title VII an EEOC charge must be construed liberally. *Stuart*, 217 F.3d at 631. "A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Williams*, 21 F.3d at 222. In a lawsuit a plaintiff may "seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Stuart*, 217 F.3d at 631 (citing *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998)).

In this case, it is true that Roberts received a disciplinary on December 8, 2017, and was denied work attendance pay on November 21, 2017, both of which occurred after Roberts's EEOC charges. Her November 20 charge furthermore explicitly confines the dates of discrimination from "05-04-2017" through "10-31-2017." Document #30-4 at 3. And in the charge Roberts explains that "[s]tarting around 05/04/2017 and *up to* 10/31/2017, I have been harassed and disciplined." *Id.* (emphasis added). Notably, Roberts did not check the box on the EEOC charge alleging that the discrimination is "continuing action." *Id.* The plain language of the charge does not include Department actions occurring after October 31.

Nevertheless, the Court considers Roberts to have exhausted the allegations regarding her December 8 disciplinary and the denial of work attendance pay on November 21. Liberally construing Roberts's November 20 EEOC charge, these instances could fairly be described as "growing out of" the allegations of retaliatory harassment and discipline in the November 20 charge. On a liberal construction they are "like or reasonably related to the substance of" the allegations in the November 20 charge. *See Stuart*, 217 F.3d at 631.

Remaining are claims for race and sex discrimination and retaliation based on Roberts's job title allegedly changing from Program Monitor to Workforce Specialist/Receptionist, and a claim for retaliatory discipline and harassment beginning on May 4, 2017. These claims fail on the merits as a matter of law.

First, Roberts's job title did not change from Program Monitor to Workforce Specialist/Receptionist. Although her email service listed her title as "DWS Workforce Specialist," her position was and has remained "Program Monitor" during all relevant times. *See* Document #28 at 7-8. Indeed, "Roberts's job title, classification, grade, and pay have not been reduced, reclassified, or modified in any way." *Id.* at 8. She therefore did not suffer an adverse employment action, as is required for her discrimination and retaliation claims, because she did not suffer "a material change in the terms or conditions of her employment." *See Meyers v. Neb. Health & Human Servs.*, 324 F.3d 655, 659-60 (8th Cir. 2003) (explaining that not everything that makes an employee unhappy is actionable and that loss of prestige alone is not an adverse employment action).

Roberts's claims for retaliatory discipline and harassment also fail. A Title VII retaliation claim requires a plaintiff to show that she engaged in statutorily protected activity, that she suffered an adverse employment action, and a causal connection exists between the two. *Cheshewalla v.*

7

*Rand & Son Const. Co.*, 415 F.3d 847, 851 (8th Cir. 2005). If she meets this prima facie case, the employer must come forward with a legitimate non-retaliatory reason for the challenged action. *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030-31 (8th Cir. 2013). Once it does so, the burden shifts back to the plaintiff to show the proffered reason was pretextual. *Id.*

Roberts argues in her response to summary judgment that "[a]fter she complained about retaliation and discrimination to the EEOC and internally, the Defendant retaliated by giving arbitrarily low performance appraisals and by taking other adverse employment actions against her." Document #43 at 5-6. Absent more specificity, the Court has inferred that Roberts is referring to her May 2017 performance review, two disciplinaries she received in fall 2017, and the denial of paid attendance pay in November 2017.

The record reveals that in Roberts's May 2017 performance review, she received "above average" and "exceptional" scores in every category for which she was scored. This positive performance review clearly does not constitute an adverse employment action, and Roberts has pointed to no other performance appraisal that she believes was arbitrarily low.

In her deposition, Roberts testified that she believed that every time she gets disciplined at work, it is a continuation of retaliation. Document #43-1 at 18-19. Discipline is only an adverse employment action when the employer uses it as a basis to change the terms and conditions of the employee's job for the worse. *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1058 (8th Cir. 2007).

Roberts received a disciplinary on August 25, 2017. There is no evidence that this disciplinary negatively affected the terms and conditions of Roberts's employment. Even if it did, though, the record reveals the Department issued the disciplinary after Roberts refused to participate

8

in an in-person training session, where she disrupted the training and sat with her back to the instructor, among other things. *See* Document #11-13. Roberts has not disputed these facts. She has thus failed to rebut the Department's nondiscriminatory reason for the disciplinary as pretext.

Roberts again received a disciplinary on December 8, 2017 for sending emails that were, in her supervisor's view, antagonizing, insubordinate, unprofessional, hostile, and combative, and that Roberts had purported to exercise supervisory authority over a coworker. The disciplinary was also for calling a coworker "unprofessional" and "ignorant" in a raised voice. Document #28 at 17-19. Roberts received a five-day suspension. Roberts has sufficiently disputed the fact that she attempted to supervise a peer employee. Document #44 at 2 (citing Document #43-6). Assuming that this basis for the disciplinary was in fact untrue, Roberts has wholly failed to show that the other reasons for the disciplinary were not true or that her supervisor, William Campbell, did not reasonably believe that Roberts had, in fact, inappropriately attempted to supervise a peer employee at the time he disciplined her. She has failed wholly to show the Department's reasons for disciplining her were a pretext for retaliation.

On November 20, 2017, Roberts took a day off without permission in order to speak with a grievance officer, to meet with her private attorney, and to visit the EEOC office. Document #28 at 21. The Department denied her subsequent request for paid attendance pay and instead required her to submit a request for eight hours of paid annual leave. *Id.* Roberts has come forward with no evidence that the Department's rationale for denying Roberts attendance pay for missing work was a pretext for retaliation. Her claims for retaliatory discipline therefore fail.

Finally, Roberts alleges retaliatory "harassment" in her complaint. Document #16 at 8. She says that the Department's conduct "escalated to the point that it affected [Roberts's] employment and subjected her to an intimidating, hostile, and offensive work environment." *Id.*

This claim fails as a matter of law because she did not suffer sufficiently actionable harassment. In a hostile work environment claim a plaintiff must prove, among other things, harassment that "affected a term, condition, or privilege of her employment." *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (quoting *Duncan v. GMC*, 300 F.3d 928, 933 (8th Cir. 2002)). Roberts points to an email that she received from a coworker with a job posting at a dollar store. In further support of her harassment claim, Roberts testified in her deposition that a coworker removed a sign advertising Roberts's notary services from Roberts's desk and that coworkers made rude and disparaging comments towards her. Document #30-3 at 34, 36-39. This workplace conduct is not actionable as a matter of law. *See Tuggle*, 348 F.3d at 720 (explaining that actionable conduct must be severe and pervasive and must create an abusive working environment, and that merely rude or unpleasant conduct is not actionable).

For the reasons explained above, the Department's motion for summary judgment is GRANTED. Document #30.

IT IS SO ORDERED this 17th day of April, 2019.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE